IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CENTRINEX, LLC,

        Plaintiff,

v.                              Case No. 12-2300-SAC

DARKSTAR GROUP, LTD, AJAX GROUP,
LLC, and ALEXANDER L. SHOGREN,

        Defendants.

MEMORANDUM AND ORDER

This case comes before the court on a motion to dismiss two of the three defendants for lack of personal jurisdiction. Defendant Darkstar Group, Ltd ("Darkstar") does not join in the motion to dismiss, and has answered the complaint. Dk. 19. Plaintiff opposes the motion.

**I. Motion to Dismiss Standard**

Plaintiff bears the burden of establishing a prima facie case of personal jurisdiction by a preponderance of the evidence. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008). Plaintiff may make this showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007). To the extent they are uncontroverted, the Court must accept the

well-pleaded allegations of the complaint. *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995). The Court resolves any factual disputes in favor of the plaintiff. *Wenz,* 55 F.3d at 1505. "Where the district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *ClearOne Communications, Inc. v. Bowers*, 643 F.3d 735 (10th Cir. 2011), quoting *AST Sports Sci., Inc. v. CLF Distrib. Ltd.,* 514 F.3d 1054, 1056–57 (10th Cir. 2008).

## II. Facts

The evidence of record and the well-pleaded allegations of the complaint which Defendants have not controverted establish the following facts.

Plaintiff Centrinex, LLC, is a limited liability company organized pursuant to the laws of Nevada, and has its principal place of business in Kansas. Defendant Darkstar is a corporation organized pursuant to the laws of British Virgin Islands which Plaintiff believes conducts its principal business operations in Miami Beach, Florida.[1] Defendant AJAX Group, LLC ("AJAX") is a limited liability company organized pursuant to the laws of the state of New York and has its principal place of business at same address in

---

[1] Darkstar's answer denies Plaintiff's belief, yet does not state its principal place of business.

Miami Beach, Florida as Darkstar.[2] Defendant Alexander L. Shogren is an individual resident of the state of Florida who is a principal of Darkstar. Plaintiff believes Shogren is also a principal of AJAX. *See* Dks. 1, 19, para. 4.

On September 21, 2011, AJAX was formed in the state of New York. On or about September 22, 2011, Centrinex entered into a contract with Darkstar for Centrinex to provide call center services to Darkstar for the ensuing two-year period. Centrinex has experience in the payday loan industry and supports those operations by providing call center services to others in that same industry. Under the agreement, Darkstar would decide to approve or disapprove loans which were worked on by Centrinex, and Darkstar would cause approved loans to be funded from its operations in Florida.

On October 12, 2011, Shogren met with Bart Miller, Centrinex's CEO, in Centrinex's Kansas office. Miller negotiated the terms and conditions of the call center contract with Shogren and others, both in person in the Kansas Centrinex office and via email. During those conversations, Shogren represented to Miller that Shogren was a principal of Darkstar and of AJAX. Three or more other representatives of Darkstar and AJAX came to the Centrinex offices in Kansas on multiple occasions.

---

[2] This fact is asserted in the Complaint, Dk. 1, para. 3, and is not denied by Darkstar's Answer, Dk. 19, para. 3. But the Contract attached to the Complaint lists Darkstar's address for purposes of notice as: "3rd Floor, Omar Hodge Bldg., PO Box 3504, Road Town, Tortola, British Virgin Islands," while another exhibit attached to the Complaint lists Ajax's address as: "560 Lincoln Road, Miami Beach, FL." See Dk. 1, Exh. A, p. 16; Dk. 1, Exh. B, p. 21, 22.

Shogren sent at least 89 emails to Centrinex related to contract negotiations, the provision of services by Centrinex, Shogren's desire to begin his own call center operations, and payment for Centrinex's services. The signature blocks used by Shogren on those emails variously represent him to be: "President & CEO of DS Lending, Ltd. & Snap Leads, Ltd"; "President & CEO of DS Lending, Ltd."; "Managing General Partner, Darkstar Partners LLC"; "Founder & Chairman, Pure Action Sports, Inc."; and simply "Darkstar Lending, LLC." Other persons affiliated with Shogren also had email and other communications with Centrinex related to the contract or services.

On January 17, 2012, Centrinex received an email stating in part: "after careful consideration we have decided to move our call center operations in-house effective today at 8:00 AM (EST)." The email was signed by "Phil, AJAX Group, LLC, … Miami Beach, FL." Dk. 18, Exh. B. Centrinex was then locked out from the software which it needed to continue providing services to Darkstar under the contract. Centrinex's CEO contacted Shogren and other representatives of Darkstar or AJAX regarding the matter and was promised payment of the outstanding invoices due at that time, but received no payment. Centrinex believed, based on the personal and electronic communications and the parties' course of dealing, that Darkstar and AJAX were one and the same business controlled by Shogren.

4

Centrinex then brought suit seeking a permanent injunction, and making the following claims: 1) violation of Kansas Uniform Trade Secrets Act against all defendants; 2) breach of contract against Darkstar; 3) tortious interference with contract against AJAX and Shogren; and 4) fraud against all defendants. Centrinex believes that from the inception of its agreement with Darkstar, all three defendants conspired to learn Centrinex's call center trade secrets and then use them for their own benefit.

**Analysis**

Defendants AJAX and Shogren have moved to dismiss them from the case for lack of personal jurisdiction, but have submitted no evidence. Dk. 11. Plaintiff contends that this court has personal jurisdiction over these two defendants because they transacted business within the state of Kansas, and committed a tortious act within the state of Kansas. Dk. 18. In support of its position, Plaintiff submits an affidavit from its CEO and copies of multiple email communications between the parties.

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010). Pursuant to Federal Rule of Civil Procedure 17(b), the capacity of a party to be sued in federal court is to be determined by "the law of the state where the court is

located." Fed. R.Civ.P. 17(b). Thus, the court looks to Kansas law. Kansas' long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, *Fed. Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.,* 17 F.3d 1302, 1305 (10th Cir. 1994), so the court need not conduct a statutory analysis apart from the federal constitutional analysis.

> "The due process analysis consists of two steps." *Id.* "First, we consider whether the defendant has such minimum contacts with the forum state that he should reasonably anticipate being haled into court there." *Id.* (internal quotation marks omitted). "This minimum-contacts standard may be satisfied by showing general or specific jurisdiction." *Id.* "Second, if the defendant has the minimum contacts with the forum state, we determine whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted). "This analysis is fact specific." *Id.*

*ClearOne*, 643 F.3d at 763, citing *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1159.

**Defendant Shogren**

To meet its burden to show minimum contacts with Kansas, Plaintiff points to the following facts, which are supported by the record. Shogren traveled to Kansas at least once as a representative of Darkstar or AJAX to visit Centrinex in relation to its call center services. Shogren exchanged numerous e-mails and had other communications with Plaintiff in Kansas in the process of negotiating, executing, and allegedly breaching the call center contract. Shogren's actions, including his alleged decision to breach the call center contract and move his call center business in-house instead of continuing his business relationship with the Plaintiff, caused injuries to Plaintiff in Kansas.

6

The court concludes that Shogren "purposefully availed [himself] of the privilege of conducting activities or consummating a transaction in" Kansas, and that by doing so, he caused injuries to Plaintiff that are the subject of this litigation. *Emp'rs Mut. Cas.*, 618 F.3d at 1160 (discussing requirements for specific jurisdiction). Accordingly, Shogren had sufficient minimum contacts with the state of Kansas to reasonably expect to be haled into court there in connection with his Centrinex-related activities.

Shogren contends that even if minimum contacts exist as to AJAX or Darkstar, the fiduciary shield doctrine prevents the exercise of personal jurisdiction over him. *See* Dk. 11, p. 5. The Tenth Circuit recognizes this doctrine. *See Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987) ("Where the acts of individual principals of a corporation in the jurisdiction were carried out solely in the individuals' corporate or representative capacity, the corporate structure will ordinarily insulate the individuals from the court's jurisdiction.") But Shogren has carefully avoided any allegation as to which corporation's shield he is raising as protection from jurisdiction over him, individually. Since the record reflects that Shogren held himself out to Plaintiff at various times as acting on behalf of DS Lending, Ltd., Snap Leads, Ltd., Darkstar Partners LLC., Pure Action Sports, and Darkstar Lending, LLC, the court cannot currently determine that Shogren's participation in the allegedly wrongful activity was solely in his capacity as an officer or employee of any corporation. Shogren

has not shown that the corporate shield doctrine applies to him. *See ClearOne*, 643 F.3d at 764.

The court thus considers whether the exercise of personal jurisdiction over Shogren would offend traditional notions of fair play and substantial justice. Here, the defendant "bears the burden of presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Emp'rs Mut. Cas.*, 618 F.3d at 1161 (internal quotation marks and brackets omitted).

> "This reasonableness analysis requires the weighing of five factors: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies."

*Id.* (citing *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1279–80 (10th Cir. 2005)).

Shogren has not attempted to discuss any of these factors, so he necessarily fails to carry his "burden of presenting a compelling case that this court's exercise of personal jurisdiction over him would be unreasonable." *ClearOne*, 643 F.3d at 764. Further, based on the facts of record, the exercise of jurisdiction over this Defendant appears to be reasonable.

**Defendant AJAX**

The record is skinnier regarding AJAX's contacts with the state of Kansas. AJAX is not a Kansas company and does not have its principal place of business there. Its only activity within Kansas shown by the record is its sending of three emails to Centrinex.

In the "unique" context of communications and activities on the internet, the Tenth Circuit has "adapt[ed] the analysis of personal jurisdiction [by] placing emphasis on the internet user or site *intentionally directing* [its] activity or operation at the forum state rather than just having the activity or operation accessible from there." *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011) (emphasis in original). With respect to email, "the apt analogues may be phone calls, faxes, and letters made or sent by out-of-state defendants to forum residents," which "have been found sufficient to support specific personal jurisdiction when they directly give rise to the cause of action." *Id.* at 1247.

Such is the case here. On January 17, 2012, AJAX sent the email which notified Centrinex that its services [to Darkstar] were no longer needed. Centrinex believes that email evidences a breach of its contract with Darkstar. The second email was sent to Centrinex by "Leah Parisian [mailto: leah@ajaxgroupllc.com]." Dated January 20, 2012, it copied Bart Miller, Alex Shogren, and others about a return shipment of some phones. Dk. 18, Exh. C, p. 00011. The third email, also sent to Centrinex by "Leah Parisian

[mailto: leah@ajaxgroupllc.com]," dated January 27, 2012, responded to Centrinex's intervening request for payment by stating that Leah would be processing all payments at the end of the month. Centrinex did not receive a payment at the end of the month. These emails directly give rise to Plaintiff's claim for breach of contract against Darkstar, for tortious interference with contract against Ajax and Shogren, and for fraud against all Defendants.

The record also contains the affidavit of Centrinex's CEO stating his belief, based on the parties' course of dealing and Shogren's representations to him, that Shogren was a principal of AJAX and of Darkstar. The close relationship between Darkstar and AJAX is shown by the facts that Darkstar apparently initiated or consented to AJAX's sending the email which terminated the Darkstar-Centrinex contract, and that Centrinex accepted AJAX's email notice as effectively terminating its contract with Darkstar. AJAX subsequently communicated with Centrinex in other matters relevant to this lawsuit, including responding to Centrinex's request for payment for services Centrinex had already rendered to Darkstar. Although these contacts are few, they are sufficient to show that AJAX purposefully directed its activities at Centrinex, which was known to be in Kansas, and that Centrinex's injuries arose out of AJAX's forum-related activities which gave rise to this lawsuit.[3] Accordingly, Plaintiff has made a prima facie case of

---

[3] The court does not have sufficient information to determine whether AJAX was viable or whether Shogren is an alter ego of AJAX, but Plaintiff's assertion that Darkstar and AJAX were actually the same corporation foreshadows this as a potential issue for another day. *See Ten Mile*, 810 F.2d at 1527.

minimum contacts. AJAX has not attempted to show that the court's exercise of personal jurisdiction over it would be unreasonable.

Based on the record as it stands today, Plaintiff has met its burden to make a prima facie showing of personal jurisdiction over these Defendants.

IT IS THEREFORE ORDERED that Defendants' motion to dismiss for lack of personal jurisdiction (Dk. 11) is denied.

Dated this 19th day of September, 2012 at Topeka, Kansas.

                              s/ Sam A. Crow
                              Sam A. Crow, U.S. District Senior Judge