IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CENTRINEX, LLC,

        Plaintiff

vs.                                               Case No. 12-2300-SAC

DARKSTAR GROUP, LTC,
AJAX GROUP, LLC, and
ALEXANDER L. SHOGREN,

        Defendants.

MEMORANDUM AND ORDER

The case comes before the court on the plaintiff's additional applications along with affidavits and evidentiary material in response to the court's order of August 4, 2015, (Dk. 110), that granted in large part the plaintiff's motion for judgment (Dk. 96), upon the Magistrate Judge's report and recommendation filed June 30, 2015, (Dk. 109). The court's order directed entry of judgment in favor of the plaintiff and against the named defendants on the following counts:

> For the Count Two Trade Secrets claim, judgment shall be entered in favor of the plaintiff and against all the defendants for injunctive relief, damages, and fees and costs as to be determined after the plaintiff's additional submission and, if needed, an evidentiary hearing. . . .
> For the Count Three Breach of Contract claim, judgment shall be entered in favor of the plaintiff and against the defendant Darkstar in the amount of $145,761.78, plus interest at the contract rate of 18% per annum, from and after January 17, 2012, and with "costs and expenses, including reasonable attorney fees, incurred by . . . enforcing its rights in the transaction," to be determined after the

> plaintiff's additional submission and, if needed, an evidentiary hearing. (Dk. 22-1, p. 7, ¶ 8). . . .
> For the <u>Count Four Tortious Interference with Business Relationship claim</u>, judgment shall be entered in favor of the plaintiff and against AJAX and Alexander Shogren in the actual damages amount of $145,761.78, plus interest at the contract rate of 18 % per annum, from and after January 17, 2012. . . .
> For the <u>Count Five Fraud</u> claim, judgment shall be entered in favor of the plaintiff and against all defendants in the actual damages amount of $145,761.78, plus interest at the contract rate of 18% per annum, from and after January 17, 2012. . . .
> On Counts Four and Five, the court accepts the uncontested report and recommendation of the magistrate judge to award punitive damages against all defendants. The plaintiff shall have 20 days from the filing date of this order to submit its application on punitive damages that will set forth its specific requested amount, its analysis of the relevant considerations, and any affidavits and evidence necessary for making this determination.

(Dk. 110, pp. 4-6). The plaintiff presented its memorandum and supporting applications, affidavits and exhibits on September 22, 2105. (Dk. 118). The 20-day deadline for the defendants to file their responses and objections has expired without anything from the defendants. The plaintiff's memorandum with supporting applications was mailed to the defendants' known addresses of record. (Dk. 118, p. 13). The returns on the court's certified mailings of its prior orders show that either they were not claimed or they were not delivered by the postal service for not being known. (Dks. 114, 117, 119 and 120). The court's last order admonished the parties that failure to follow these additional procedures would be treated "as a waiver" and result in a prompt ruling on all pending matters. (Dk. 110, p. 6). The court therefore accepts as uncontested the plaintiff's arguments and evidence concerning actual damages, punitive damages, and fees and costs, and the court

2

regards the defendants as having waived all objections to the same and having chosen to introduce no opposing evidence on these matters. The court is satisfied that the plaintiff's written presentation adequately covers the different factors on the remaining damage and fee issues with sufficient factual detail as to make a hearing unnecessary.

Only the count two trade secrets claim has an open question on actual damages and the scope of injunctive relief. The plaintiff's chief executive officer, Bart Miller, avers that during their contractual negotiations of the Customer Service Outsourcing Agreement, the defendant Alexander Shogren represented himself to be a principal of the other defendants, and that Shogren and other representatives of the defendants visited the plaintiff's call center multiple times. Miller also states that Shogren and the others were able "to see how the [plaintiff's] call center operations function, and specifically to learn the details of Centrinex's call center and operations, from personnel, to equipment and facilities, to provision of services and pricing for such services." (Dk. 118-1 ¶ 9). The defendants thereafter abruptly terminated the agreement and established their own call center operations in house. Miller avers the defendants in doing so used "the knowledge that they gained from working with Centrinex about its structure, staffing of personnel, operations and pricing," all of which are based upon "confidential and proprietary information and processes and trade secrets of Centrinex." *Id.* at ¶¶ 12-13. Miller also avers that Centrinex's actual

3

damages on this claim are the same undisputed amount for breaching the agreement of $145,761.78. From this evidence, the court finds that Centrinex is entitled to actual damages in this amount on count two.

As for injunctive relief on count two, Fed. R. Civ. P. 65(d) requires "every order granting an injunction . . . state the reasons why it is issued; . . . state its terms specifically; and . . . describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." The injunction is issued here, because the court has granted judgment for plaintiff on all claims pleaded against the defendants for all the reasons stated in its earlier orders. Miller also avers that the defendants' subsequent disclosure of these confidential and propriety matters to others could cause additional harm to the plaintiff. In its complaint, Centrinex alleges it "has particular and specialized experience, expertise, and trade secrets in the payday loan industry and support for those operations by way of its call center services it provides to others." (Dk. 1, ¶ 8). Centrinex further alleged that the defendants improperly learned "Centrinex's trade secrets—its confidential trade information, patterns, programs, methods, techniques and processes." *Id.* at ¶ 13. The court hereby enjoins the defendants from disclosing or making use of Centrinex's confidential and proprietary information consisting of the patterns, programs, methods, techniques and processes on which Centrinex has based its structure of operations, facilities, staffing, and pricing for its call center

4

services. The injunctive relief shall be subject to and consistent with the relevant terms of K.S.A. 60-3320 and 60-3321.

Common to counts two and three is the plaintiff's recovery of reasonable attorneys' fees and costs. Mark Murphy, counsel for Centrinex, has submitted an affidavit and billing records in support of the court's determination of reasonableness. (Dk. 118-2). The court has evaluated Mr. Murphy's averments on his experience and the customary fee rates, the nature of this litigation, the pretrial motion practice, and the additional work and motions precipitated by the defendants' repeated failure to cooperate with discovery. The court has weighed this evidence and considered the factors recognized in Kansas as relevant in determining the reasonableness of an attorney fee request. *See Johnson v. Westhoff Sand Co., Inc.*, 281 Kan. 930, 940-41, 135 P.3d 1127 (2006). While the hours spent on this litigation seems high for the stage at which judgment is being entered and for the damages pled, the court accepts the reasonableness of both hours and rate as necessary and appropriate largely due to the defendants' recalcitrant behavior and "willful misconduct, worthy of sanctions." (Dk. 109, p. 11). The court, therefore, directs entry of judgment of attorneys' fees in this case in the amount of $87,002.00, and costs in the amount of $4,411.62.

The last issue is the amount of punitive damages. The magistrate judge held:

5

> Centrinex requests an award of punitive damages in addition to actual damages, claiming that defendants acted willfully, wantonly, and maliciously so as to entitle it to an award of punitive damages. Defendants respond that plaintiff did not claim punitive damages in its complaint, and that plaintiff has not followed the required procedure for pleading punitive damages under Kansas law, specifically K.S.A. § 60-3703. It is well established in this district that K.S.A. § 60-3703 is purely procedural and does not apply in federal court. It is not necessary for a plaintiff in federal court to seek leave before filing its claim for punitive damages. Under Fed. R. Civ. P. 55(b)(2), the court should accept as true the allegations of plaintiff's complaint, including the allegations that defendants acted in a willful, wanton, and malicious manner, and grant judgment for liability on those issues.
>
> Although the complaint in this case does not specifically use the term "punitive damages," it does assert that "AJAX and Shogren acted in a willful, wanton and malicious manner toward Centrinex" in its claim for tortious interference. Additionally, plaintiff's fraud claim alleges that all defendants acted in a willful, wanton and malicious manner. This court recommends that punitive damages be awarded. At the scheduling conference, Mr. Shogren's unsuccessful deposition and in the plaintiff's notice for that deposition, plaintiff made its intent to seek punitive damages and its basis for seeking them clear. An evidentiary hearing may necessary to determine the amount of punitive damages to be imposed regarding plaintiff's claims for tortious interference and fraud.

(Dk. 109, pp. 8-9). The court accepted and adopted the magistrate judge's recommendation to award punitive damages against all defendants. (Dk. 110, p. 5). Indeed, punitive damages may be awarded when it is determined that a defendant "acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." K.S.A. 60-3702(c). The court determines the amount of punitive damages in a separate proceeding after considering the following factors:

> 1. The likelihood at the time of the alleged misconduct that serious harm would arise from the defendant's misconduct;
> 2. The degree of the defendant's awareness of that likelihood;
> 3. The profitability of the defendant's misconduct;

6

> 4. The duration of the misconduct and any intentional concealment of it;
> 5. The attitude and conduct of the defendant upon discovery of the misconduct;
> 6. The financial condition of the defendant; and
> 7. The total deterrent effect of other damages and punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, compensatory, exemplary and punitive damage awards to persons in situations similar to those of the claimant and the severity of the criminal penalties to which the defendant has been or may be subjected.

K.S.A. 60-3703(b).  Any award of punitive damages shall not exceed the defendant's annual gross income as determined from the "the defendant's highest gross annual income earned for any one of the five years immediately before the act for which such damages are awarded." K.S.A. 60-3702(e)(1).

As evident in this case, punitive damages in the context of a default judgment is complicated by a lack of discovery on all the factors relevant in determining the amount. The court, however, agrees that defendant's failure to cooperate with discovery should not be rewarded by barring a punitive damages award. *See Beck v. Atlantic Contracting Co., Inc.*, 1994 WL 608598 at *1 (D. Kan. Oct. 14, 1994). Thus, the lack of complete and detailed evidence on some factors is not fatal here. Because the plaintiffs have presented some income tax filings from 2011 for the defendants Shogren and Dark Star, the court will accept the gross income reported on Shogren's return, $917,415.00 as the statutory cap. K.S.A. 60-3702(e)(1).

7

While the factors favor a significant punitive damages award, the court is not persuaded they warrant the amount requested by the plaintiff who is asking for one million dollars. The court accepts the plaintiff's uncontested presentation that the defendants used the pretense of a business deal to learn and unlawfully acquire the plaintiff's business expertise and experience and to appropriate the same for its own gain and profit by moving in-house the call service operations. It follows that the defendants knew this would cause financial harm to the plaintiff, but the record does not show that this financial harm was necessarily intended to reach beyond this particular business deal, and, if so, for what duration. The plaintiff's evidence is that early efforts to settle this dispute over the defendants' termination of the contract included the defendants' making promises to pay outstanding invoices but then never making any payments. This conduct aligns with the defendants' display of conduct in this litigation. The magistrate judge repeatedly tried to move this litigation forward in spite of the defendants' obstreperous and recalcitrant behavior that included unfulfilled statements of cooperation. The evidence of record is entirely too thin for the court to draw any inferences about the profitability of the defendants' misconduct. The court has reviewed the defendants' tax returns that are part of the record, but it can draw few reliable inferences from them other than Shogren's gross income in 2011. The court does not accept the plaintiff's invitation to speculate about these matters. On the factor of

deterrence, the court finds that the award of actual damages, fees and costs ($237,175.40) are already significant and that an additional award of $250,000.00 for punitive damages would be a sufficient deterrent to businesses and persons in similar situations. *See Creekstone Farms Premium Beef, LLC v. Decisions Energy Management*, 2014 WL 3818529 at *6-*9 (D. Kan. Aug. 4, 2014) (Default judgment with actual damages of $251,366.66 for fraud and punitive damages of $250,000.00); *Meitler Consulting, Inc. v. Dooley*, 2007 WL 1834008 (D. Kan. Jun. 26, 2007) (Default judgment against defendant for willful and malicious conversion as well as misappropriation of trade secrets and a $48,000 award in punitive damages).

IT IS THEREFORE ORDERED that incorporating the terms of the court's prior order (Dk. 110) with the above findings and combining the counts due to the overlapping relief extending to all defendants, that default judgment is entered in favor the plaintiff and against all the defendants, Darkstar Group, LTC, AJAX Group, LLC and Alexander L. Shogren, jointly and severally, as respectively named in the different counts of plaintiff's complaint, for actual or compensatory damages in the amount $145,761.78, plus interest at the contract rate of 18% per annum, from and after January 17, 2012; for injunctive relief which hereby enjoins each defendant from disclosing or making use of Centrinex's confidential and proprietary information consisting of the patterns, programs, methods, techniques and

9

processes on which Centrinex has based its structure of operations, facilities, staffing, and pricing for its call center services, and this injunctive relief shall be subject to and consistent with the relevant terms of K.S.A. 60-3320 and 60-3321; for attorneys' fees in the amount of $87,002.00; for costs in the amount of $4,411.62; and for punitive damages in the amount of $250,000.00, to bear interest at the applicable post-judgment rate.

Dated this 29th day of October, 2015, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge